Daniel A. Frischberg, Esq.
The Law Office of Daniel A. Frischberg, LLC
525 Route 73 South. Suite 200
Marlton, NJ 08053
(856) 273-6979

Philip D. Stern, Esq.
Andrew T. Thomasson, Esq.
Stern Thomasson LLP
2816 Morris Avenue, Suite 30
Union, NJ 07083-4870
(973) 379-7500

Representing Plaintiff, Jennifer D. Hovermale

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JENNIFER D. HOVERMALE, on behalf of herself and all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>IMMEDIATE CREDIT RECOVERY, INC.,<br><br>Defendant. | **CLASS ACTION COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff JENNIFER D. HOVERMALE ("Plaintiff" or "HOVERMALE"), on behalf of herself and all others similarly situated, by way of Complaint against Defendant, IMMEDIATE CREDIT RECOVERY, INC. ("Defendant" or "ICR"), says:

## I. PRELIMINARY STATEMENT

1. This action stems from the ICR's violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692 et seq.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3. Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to PLAINTIFFS' claims occurred within this federal judicial district, and because ICR regularly transacts business within this federal judicial district and, therefore, resides in the State of New Jersey within the meaning of 28 U.S.C. § 1391(b) and (c).

## III. PARTIES

4. HOVERMALE is a natural person.

5. At all times relevant to this Complaint, HOVERMALE was a citizen of the State of New Jersey residing in Camden County.

6. At all times relevant to this Complaint ICR was a for-profit corporation of the State of New York registered as a foreign corporation with the State of New Jersey.

7. On information and belief, ICR has a principle place of business at 169 Myers Corners Road, Suite 110, Wappinger Falls, New York 30144.

## IV. FACTS

8.      The purpose of ICR is and it is regularly engaged throughout the United States in the collection of financial obligations alleged to be due others.

9.      Among other things, ICR's website stated:

> MISSION STATEMENT: ICR is committed to providing superior debt recovery services while maintaining the highest level of professionalism and respect for all parties involved. This will be accomplished by the pledge to ensure that all consumer debtors maintain their dignity and self worth throughout the assistance being provided to them in resolving their outstanding debts.
>
> Since our inception in 1990, ICR has specialized in the recovery management and resolution of delinquent Perkins, Health Professional and Institutional student loans.
>
> ICR is fully registered and licensed to provide collection services in all 50 states, Puerto Rico and the Virgin Islands, to the extent required by applicable law. In addition, ICR has experienced tremendous success resolving accounts from debtors in Europe and many other parts of the world.

10.     On or about February 9, 2015, ICR mailed a letter ("LETTER") to HOVERMALE.

11.     A true but partially redacted copy of the LETTER is attached as Exhibit "A".

12.     By virtue of the LETTER, ICR alleged that HOVERMALE incurred a financial obligation ("Debt") to Rider University arising from a Federal Perkins Loan which, at the time ICR sent the LETTER, the Debt was alleged to be in default.

13. A Federal Perkins Loan is limited to loans issued by participating post-secondary educational institutions for the purpose of financing a needy student's education.

14. Upon information and belief ICR received the Debt for purposes of collection after the Debt was in default.

15. ICR mailed the LETTER to HOVERMALE in an attempt to collect the Debt.

16. The LETTER was the initial communication HOVERMALE received from ICR concerning the Debt.

17. HOVERMALE did not receive any written communication from ICR dated or sent within 5 days after she received the LETTER.

18. The LETTER repeatedly stated or suggested that, if HOVERMALE called ICR, it would act in HOVERMALE's interest when, in fact, ICR always acted on behalf of its own interest and those of the creditors for whom it attempted to collect debts.

19. The LETTER stated that the "Amount Due" was $2,069.58 but failed to disclose that ICR's collection costs would be added to the Amount Due.

20. The LETTER falsely stated that, among other things, the Amount Due could be changed due to "late charges" because no late charges were incurred after a Federal Perkins loan is in default.

21. Neither the LETTER nor any communication sent within 5 days after ICR's initial communication with HOVERMALE did ICR provide written notice to HOVERMALE that contained a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

22. Neither the LETTER nor any communication sent within 5 days after ICR's initial communication with HOVERMALE did ICR provide written notice to HOVERMALE that contained a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

23. Neither the LETTER nor any communication sent within 5 days after ICR's initial communication with HOVERMALE did ICR provide written notice to HOVERMAN that contained a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

V. **CLASS ACTION ALLEGATIONS**

24. HOVERMALE brings this action individually and as a class action on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

25. HOVERMALE seeks to certify a class of those persons to whom ICR sent a letter in an attempt to collect a student loan substantially in the same form as Exhibit "A".

26. On information and belief, it is ICR's policy and/or practice to send written communications in an attempt to collect a student loan substantially in the same form as Exhibit "A".

27. Subject to discovery and further investigation which may cause Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, Plaintiff defines the "Class" as

> Excluding persons who, prior to the date this action is certified to proceed as a class action, either
>
> (a) obtained a discharge in bankruptcy,
>
> (b) commenced an action in any court against ICR alleging a violation of the Fair Debt Collection Practices Act,
>
> (c) signed a general release of claims against ICR, or
>
> (d) is a Judge assigned to this case or member of such Judge's staff or immediate family,

the **Class** consists of:

> Each natural person to whom ICR mailed a letter during the Class Period to a New Jersey address where the letter was in the same form or substantially similar form as Exhibit "A" and ICR cannot demonstrate that the letter was returned to ICR by the Postal Service.
>
> The "Class Period" means the continuous time period between and including (i) the earliest date which is within one year immediately preceding the filing of this Complaint and (ii) the 21st day after the earlier

of the date ICR was served with process or the date ICR signs a waiver pursuant to Fed.R.Civ.P. 4(d).

28. Subject to discovery and further investigation which may cause Plaintiff to modify the following definition of the "Class Claims" at the time Plaintiff moves for class certification, Plaintiff defines the Class Claims as all claims arising under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., from ICR's sending the letter in the same form or substantially similar form as Exhibit "A."

29. Based on discovery and further investigation (including, but not limited to, Defendant's disclosure of class size and net worth), Plaintiff may, in addition to moving for class certification using modified definitions of the Class and the Class Claims, seek certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

30. The identity of each member of the Class is readily ascertainable from ICR's records including records of those educational institutions for whom ICR attempted to collect debts.

31. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Fed. R. Civ. P. 23(a) because there is a well-defined community of interests in the litigation in that

   a. *Numerosity*. Plaintiff is informed and believes, and on that basis alleges, that the members of the Class are so numerous that joinder of all members

would be impractical. On information and belief, there are more than 40 members of the Class.

    **b.**   *Commonality.* Common questions of law and fact exist as to all members of the Class, the principal issues are whether Defendant's letters substantially in the form of Exhibit "A" violates the FDCPA.

    **c.**   *Typicality.* HOVERMALE's claims are typical of the claims of the class members. HOVERMALE and all members of the Class have claims arising out of the ICR's common and uniform course of conduct as alleged in this Complaint.

    **d.**   *Adequacy.* HOVERMALE will fairly and adequately protect the interests of the class members insofar as HOVERMALE has no interests that are adverse to the absent class members. HOVERMALE is committed to vigorously litigating this matter. HOVERMALE has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. HOVERMALE and HOVERMALE's counsel have no interests which might cause them not to vigorously pursue the instant class action lawsuit.

**32.** This action may be maintained as a "B1a-class", a "B2-class", a "B3-class", or a hybrid of any two or all three types however, at the time of commencing this action, Plaintiff expects to seek certification of the Class and the Sub-Class under FED. R. CIV. P. 23(b)(3) because:

    **a.**    the questions of law and fact common to members of the Class appear to predominate over any questions affecting an individual member, and

    **b.**    a class action would be superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

### VI. PLAINTIFFS' LEGAL CONTENTIONS FOR CLAIMS ARISING FROM VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

    **A.** The FDCPA "covers conduct taken in connection with the collection of any debt." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3rd Cir. 2014) (internal quotation marks omitted). The Act "was passed to promote ethical business practices by debt collectors." *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002). The Act was necessary because existing consumer protection laws were inadequate as demonstrated by abundant evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors which contributed to the number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. 15 U.S.C. §§ 1692(a) and 1692(b). Thus, Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by debt collectors, ***and*** to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (internal quotes and ellipsis omitted; emphasis added); 15 U.S.C. § 1692(e).

**B.** "Congress recognized that 'the vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness or marital difficulties or divorce.'" *FTC v. Check Investors, Inc.,* 502 F.3d 159, 165 (3d Cir. 2007). Nevertheless, "'[a] basic tenet of the Act is that *all* consumers, *even those who have mismanaged their financial affairs resulting in default on their debt*, deserve 'the right to be treated in a reasonable and civil manner.'" *FTC, supra,* 502 F.3d at 165 (emphasis added) quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997).

**C.** "Congress also intended the FDCPA to be self-enforcing by private attorney generals [sic]." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004). "In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused." *Jacobson v. Healthcare Fin. Services, Inc.*, 516 F.3d 85, 91 (2d Cir. 2008); and, see, *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055 (9th Cir. 2011). "Thus, the FDCPA enlists the efforts of sophisticated consumers … as private attorneys general to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jensen v. Pressler and Pressler, LLP*, ___ F.3d ___, (3rd Cir. June 30, 2015) (internal quotation marks omitted).

**D.** The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer," *Brown v. Card Serv. Ctr*, 464 F.3d 450, 453n1 (3d Cir. 2006). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). For example, a "debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 455. Furthermore, except where the Act expressly makes knowledge or intent an element of the violation, the "FDCPA is a strict liability statute." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing, in footnote 7, supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

**E.** Liability under the FDCPA arises upon the showing of a single violation. *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3 (2d Cir. 1993).

**F.** "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the

defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

**G.** Liability under the FDCPA is excused *only* when a debt collector establishes, as an affirmative defense, the illegal conduct was either "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c), or an "act done or omitted in good faith in conformity with any advisory opinion of the" Consumer Financial Protection Bureau, 16 U.S.C. § 1692k(e). Thus, common law privileges and immunities are not available to absolve a debt collector from liability under the FDCPA. See, *Heintz v. Jenkins*, 514 U.S. 21, (1995); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3rd Cir. 2011); and *Sayyed v. Wolpoff & Abramson*, 485 F. 3d 236, 232-233 (4th Cir. 2007).

**H.** A debt collector who violates any provision of the FDCPA is liable for "additional damages" (also called "statutory damages") up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1692k(a). The absence of actual damages is not a bar to such actions as "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n3 (1973). Indeed, Congress, through "the FDCPA[,] permits and encourages parties who have suffered no loss to bring civil actions for statutory violations." *Jacobson, supra,* 516 F.3d at 96 (emphasis added).

**I.** The FDCPA also provides for class relief "capped" at the lesser of $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA." *Weiss, supra,* 385 F.3d at 345. Indeed, while limiting class relief, Congress nevertheless recognized the effectiveness of class actions to enforce the FDCPA and, therefore, mandated that a class action should be maintained "without regard to a minimum individual recovery." *Id.* When a debt collector opposes class certification based on its minimal or negative net worth, "there is a chance that no claims would proceed against Defendants due to a lack of financial incentive, thereby leaving unpunished allegedly thousands of FDCPA violations. This is exactly the kind of result Congress intended to avoid through the creation of the class action form." *Barkouras v. Hecker*, 2006 WL 3544585, 2006 U.S.Dist.Lexis 88998 (D.N.J. Dec. 8, 2006).

## VII. CAUSE OF ACTION

33. HOVERMALE realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

34. HOVERMALE is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

35. ICR is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

36. The LETTER is a "communication" within the meaning of 15 U.S.C. § 1692a(2).

37. ICR's use of the LETTER in its attempt to collect the Debt violated the FDCPA in one or more of the following ways:

   a. In violation of 15 U.S.C. § 1692e, the LETTER involved ICR's use of false, deceptive or misleading means in its attempt to collect the Debt including, but not limited to, §§ 1692e(1), 1692e(2)(A), 1692e(2)(B), 1692e(5), and 1692 e(10);

   b. In violation of 15 U.S.C. § 1692f, the LETTER involved ICR's use of unfair or unconscionable means in its attempt to collect the Debt including, but not limited to, § 1692f(1).

   c. In violation of 15 U.S.C. § 1692g, ICR failed to provide Hovermale with the required written notice including, but not limited to, the notices required under § 1692g(a)(3), 1692g(a)(4), and 1692g(a)(5).

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Jennifer D. Hovermale, respectfully requests that the Court enter judgment against Defendant, Immediate Credit Recovery, Inc., as follows:

38. An order certifying that this Case may proceed as a class action pursuant to Fed. R. Civ. P. 23 including defining the class, defining the class claims, and appointing and the undersigned attorneys as class counsel;

39. An award of statutory damages for HOVERMALE pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

40. An award of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

41. Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(B)(3); and

42. Such other relief as the Court deems just and equitable.

## IX. JURY DEMAND

Plaintiff, Jennifer D. Hovermale demands trial by jury on all issues so triable.

## X. CERTIFICATION PURSUANT TO LOCAL RULE

Pursuant to L. Civ. R. 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding

contemplated. I further certify that I know of no party, other than putative class members, who should be joined in the action at this time.

        By: s/ Daniel Adam Frischberg
        Daniel Adam Frischberg (DF2118)
        The Law Office of Daniel A. Frischberg, LLC
        3000 Atrium Way, Suite 212
        Mt. Laurel, NJ 08053
        (856) 273-6979
        Attorney for Plaintiff

        By: s/ Philip D. Stern
        Philip D. Stern, Esq.
        Stern Thomasson LLP
        2816 Morris Avenue, Suite 30
        Union, NJ 07083-4870
        (973) 379-7500
        Attorney for Plaintiff

        By: s/ Andrew T. Thomasson
        Andrew T. Thomasson, Esq.
        Stern Thomasson LLP
        2816 Morris Avenue, Suite 30
        Union, NJ 07083-4870
        (973) 379-7500
        Attorney for Plaintiff

Dated: July 17, 2015

# EXHIBIT "A"



**IMMEDIATE Credit Recovery Incorporated**              **Collection Agency Division**

PO BOX 1900 WAPPINGERS FALLS, NY 12590
(800) 964-5689
fax (845) 297-8282

Feb 9, 2015

JENNIFER D HOVERMALE
915 OLD WHITE HORSE PIKE
WATERFORD, NJ 08089

ACCT #: ▮▮▮044
RE: NDSL/PERKINS/NURSING LOAN(S)
AMT DUE:$    2069.58
CLIENT: RIDER UNIVERSITY-P2
AGENT: FP2
YOUR PIN: ▮▮▮6034

Did you know that with the help of ICR's trained specialist you can have:
* IMPROVED CREDIT RATING*RESTORED ELIGIBILITY FOR ADDITIONAL FUNDING
* DEFERMENTS AND FORBEARANCE*TRANSCRIPTS/DIPLOMA IF ELIGIBLE

Our team of trained specialists are here to help you. Your FEDERAL LOAN is now with our office, and we would like to take this opportunity to assist you in resolving this obligation. There are options you may not be aware of. When contacting our office, your call will be directed to a qualified student loan recovery specialist. Since ICR has no affiliation with any lending institution we are able to guide you through the submission process. We will take the time to review both the positive and negative aspects of your decision.

            WHY CONSOLIDATE?
* Combines multiple student loans, creating one low, monthly payment.
* Low fixed interest rate.
* Income sensitive and extended repayment options.
* Deferment options.
            WHO SHOULD CONSOLIDATE?
* Borrowers with one or more student loan(s).
* Borrowers who have loans with a variety of lenders.
* Borrowers with several due dates for their loans.

Please note that the amount due above is as of the date of this letter. Due to interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Therefore, if you pay the amount shown above, an adjustment may be necessary. For further information, please call 1-800-964-5689 or contact us via mail at the address above.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector.

*4*     Please see reverse side for important information

To resolve your account using a credit card or a checking/savings account please:

- *Call toll free: (800) 964-5689

Or

- *Online at: pay.icrcollect.com

Or

- *Email us at: icr@icrcollect.com

Or

- you may mail in your payment to:
PO Box 1900 Wappingers Falls, NY 12590

*Fees may apply where applicable

Detach upper portion and return with payment using the enclosed envelope

**Massachusetts Residents**: NOTICE OF IMPORTANT RIGHTS

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the debt collector.

**New York City Residents**: New York City Department of Consumer Affairs license number 0888212. When calling please ask for John York.

**North Carolina Residents**: North Carolina Department of Insurance Permit # 101370.

**Tennessee Residents**: This collection agency is licensed by the Collection Service Board of the Tennessee Department of Commerce and Insurance.

**Colorado Residents**: In-State Office: 700 Seventeenth Street, Suite 200, Denver, Colorado 80202. Toll Free #: 1-866-436-4766

Physical Address: 169 Myers Corners Rd., Ste 110, Wappingers Falls, NY 12590
Hours of Operation (Eastern Time):    8 am to 9 pm Monday Tuesday Wednesday Thursday
                                      8 am to 4:30 pm Friday