NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| JENNIFER D. HOVERMALE, *on behalf of herself and all others similarly situated,*<br><br>Plaintiffs,<br>v.<br><br>IMMEDIATE CREDIT RECOVERY, INC.,<br><br>Defendant. | Civil No. 15-05646 (RBK/JS)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

Plaintiff Jennifer Hovermale, on behalf of herself and all others similarly situated, brings claims against Defendant Immediate Credit Recovery Inc. ("ICR"), for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. The Court addresses two motions: (1) ICR's Rule 12(b)(1) motion to dismiss for lack of Article III standing (Doc. Nos. 92–93); and (2) Hovermale's motion for class certification (Doc. No. 88).[1] The Court **DENIES** ICR's motion to dismiss and **GRANTS** Hovermale's motion for class certification.

## I. BACKGROUND

Hovermale sued debt collector ICR after ICR sent her a letter about her defaulted federal Perkins student loan, which helped finance Hovermale's education at Rider University. (Doc. No. 1 ("Compl.") at ¶¶ 9–15.) The letter, dated February 9, 2015, stated:

> Due to interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Therefore, if you pay the amount shown above, an adjustment may be necessary.

[1] Because separate sets of briefs exist for these two motions, the Court's citations denote the class certification briefs with "Cert." and the motion to dismiss briefs with "MTD."

(Compl. at Ex. A.) Although Hovermale does not appear to dispute that the loan accrued interest, she avers that she initially believed the "late charges" representation to be true, but later learned it was false. (Doc. No. 88-5, Hovermale Dec. at ¶ 2.) Hovermale contends that during the proposed class period, ICR sent 2,893 other New Jersey addresses similar letters created from ICR's "Letter 4" template. (Doc. No. 88-2, Stern Dec. at Ex. A; *id.* at Ex. B, 66:7–17.) ICR contends it provided this number in error and only sent 207 such letters. (Def.'s Cert. Opp. Br. at 30.)

Hovermale brought this putative class action, alleging that the letter and its "late charges" language violated FDCPA Sections 1692e, f, and g. *See* 15 § U.S.C. 1692 *et. seq.* The Section 1692g claim is Hovermale's individual claim. (Compl. at ¶ 37c; *see also* Pl.'s Cert. Br. at 23.) Among other things, Hovermale alleges that the "late charges" representation violates the FDCPA because Perkins loans cannot accrue late charges after default. (Compl. at ¶ 20.) ICR then moved for summary judgment, which this Court granted in part. (Doc. Nos. 28–29); *Hovermale v. Immediate Credit Recovery Inc.*, No. 15-cv-5646, 2016 WL 4157160, at *1 (D.N.J. Aug. 4, 2016). The Court granted judgment to ICR on Hovermale's Section 1692f claim, but denied the motion as to the Section 1692e and g claims. *Id.* In denying ICR's motion as to the Section 1692e claim, this Court found the letter's late charges language "materially misleading to the least sophisticated debtor" because late charges cannot accrue after default. *Id.* at *4. It also held that "[t]he representation that Defendant could assess interest does not diminish the misrepresentation that it could assess late charges." *Id.* at *3.

Hovermale now seeks to certify a class of individuals who received letters at their New Jersey addresses during the proposed class period. ICR opposes class certification and has

separately moved to dismiss under Federal Rule of Procedure 12(b)(1), arguing that Hovermale lacks standing to bring the Section 1692e claims.

## II. DISCUSSION

Courts generally decide standing issues before class certification issues because standing is jurisdictional. *See Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204 (D.N.J. 2003); *but see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (explaining that the exception to this rule instructs courts to address class certification before standing when class certification is the "logically antecedent" issue). Because this case is no exception, the Court addresses ICR's motion to dismiss for lack of standing before deciding whether to certify any class. *See Clark*, 213 F.R.D. at 204 ("[T]he *Ortiz* exception treating class certification as the antecedent consideration does *not* apply if the standing issue would exist regardless of whether the named plaintiff filed his claim alone or as part of a class.") (emphasis in original).

### A. ICR's Motion to Dismiss is Denied Because Hovermale Has Standing

Claiming that Hovermale lacks standing, ICR moves to dismiss Hovermale's claims under 15 U.S.C. § 1692e, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id.*, and provides a non-exhaustive list of behavior that violates the prohibition.[2] *See Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011). As set forth below, the Court denies ICR's motion because Hovermale has Article III standing.

---

[2] Specifically, Hovermale alleges violations of Section 1692e, including Sections 1692e(1), 1692e(2)(A), 1692(2)(B), 1692e(5), and 1692e(10). (Compl. at ¶ 37a.) As this Court previously held, "Plaintiff's Section 1692e claim will be restricted to the Letter's representations regarding late charges." *Hovermale*, 2016 WL 4157160, at *4.

1. Motion to Dismiss Standard

A motion to dismiss for lack of standing must be brought under Federal Rule of Civil Procedure 12(b)(1) because standing is jurisdictional. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be brought at any time and may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In the second type of Rule 12(b)(1) motion—which ICR brings here—the Court does not presume that the Complaint's allegations are true. *Id.* Instead, it is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* The plaintiff has the burden to prove that the Court has jurisdiction. *Id.* If the Court does not, it must dismiss the case without prejudice. *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155–56 (3d Cir. 1997).

2. Hovermale Suffered a Concrete and Particularized Injury in Fact

For a court to have jurisdiction, a plaintiff must have standing at the time the complaint is filed. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.5 (1992). Plaintiff bears the burden of establishing standing by showing: (1) an injury in fact; (2) a causal relationship between that injury and the challenged action; and (3) the likelihood that a favorable decision would redress that injury. *See Defenders of Wildlife*, 504 U.S. at 560–61; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). ICR only challenges Hovermale's ability to show an "injury in fact" here. (*See generally* Def.'s MTD Br.)

An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Defenders of Wildlife*, 504 U.S. at 560. Although a concrete injury "must actually exist," the injury need not be

tangible. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548–49 (2016). An intangible injury is concrete if it resembles harm traditionally recognized in English or American courts and has been elevated to a legally cognizable injury by Congress. *Id.* at 1549. Indeed, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact" and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549 (emphasis in original); *see also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 637–38 (3d Cir. 2017). However, "a bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549.

Here, the parties initially dispute the "harm" at issue. According to ICR, the "injury that results from use of [the letter's] language . . . only occurs if the balance stated in a letter will not change," as the language creates a "false sense of urgency for the obligor to pay the balance." (Def.'s MTD Br. at 9, 24–25.) Thus, ICR argues, Hovermale has suffered no "concrete and particularized" injury from the letter's late charges language because Hovermale's balance changed daily given the loan's accruing interest. (*See*, *e.g.*, Def.'s MTD Br. at 2, 25–30, 39.) Hovermale, by contrast, argues that the letter's late charges language caused her to suffer a concrete and particularized harm because its inclusion violated her substantive right to receive truthful, non-misleading, and non-deceptive information from ICR. (Pl.'s MTD Opp. at 19–22.)

The Court agrees with Hovermale as to the framing of the harm at issue because as courts have noted, "[t]he injury, for standing purposes, is framed as a right to receive accurate and non-misleading information" from ICR under Section 1692e of the FDCPA. *Bordeaux v. LTD Fin. Servs., L.P.*, No. 16-cv-0243, 2017 WL 6619226, at *1 (D.N.J. Dec. 28, 2017); *Medina v. Allianceone Receivables Mgmt., Inc.*, No. 16-cv-4664, 2017 WL 220328, at *1 (E.D. Pa. Jan. 19,

2017) ("The injury to the consumer alleged here is the false and misleading statement made by the debt collector in an effort to collect or settle the consumer's debt obligation.").[3]

When, as here, a plaintiff's standing is "based on a violation of a statutorily created right" like the right to be free from deceptive or misleading information under the FDCPA, the standing issue "turns on whether such a right is substantive or merely procedural." *Napolitano v. Ragan & Ragan*, No. 15-cv-2732, 2017 WL 3535025, at *5 (D.N.J. Aug. 17, 2017); *Pisarz v. GC Servs. Ltd. P'Ship*, No. 16-4552, 2017 WL 1102636, at *3 (D.N.J. Mar. 24, 2017). A "procedural right" is defined as "[a] right that derives from legal or administrative procedure; a right that helps in the protection or enforcement of a substantive right." *In re Michaels Stores, Inc.*, No. 14-cv-7563, 2017 WL 354023, at *12, 2017 WL 354023, at *7 n.12 (D.N.J. Jan. 24, 2017) (quoting *Landrum v. Blackbird Enters., LLC*, 214 F. Supp. 3d 566, 571 (S.D. Tex. 2016)) (internal citations omitted) (alteration original). A "substantive right" is "[a] right that can be protected or enforced by law; a right of substance rather than form." *Id.* (citing *Landrum*, 214 F. Supp. 3d at 571) (internal citations omitted) (alteration original).

ICR argues that Hovermale's reliance on the late charges language alleges only a "bare procedural violation" of the FDCPA divorced from any "concrete" harm, which is insufficient to satisfy Article III's "injury in fact" requirement. (*See*, *e.g.*, Def.'s MTD Br. at 25, 39.) Hovermale argues that the letter's late charges language caused her to suffer a "concrete" informational harm because its inclusion violated her substantive right to receive truthful, non-

[3] ICR disagrees that the late charges language was false or misleading. (Def.'s MTD Br. at 7, n.2.) But ICR must accept the Court's prior ruling that, "as a matter of law," the late charges language is "materially misleading to the least sophisticated debtor" under Section 1692e. *Hovermale*, 2016 WL 4157160, at *4. The Court thus rejects for a second time ICR's arguments that it did not violate the FDCPA because the letter's late charges language has been given "safe harbor" protection. *Id.*; (Def.'s MTD Br. at 20–24.) The Court also rejects ICR's arguments to the extent they seek to re-litigate whether the late charges language is material.

misleading, and non-deceptive information from ICR. (Pl.'s MTD Opp. at 19–22.) Like the many other courts in this district, the Court agrees with Hovermale.

Although post-*Spokeo*, the Third Circuit has not addressed whether an FDCPA violation gives rise to a concrete injury, courts in this district have considered that question. *See Pisarz*, 2017 WL 1102636, at *4 (collecting cases in which FDCPA violations gave rise to concrete injury). Despite ICR's claim that its letter's "late charges" language amounts to no more than a "bare procedural violation" of the FDCPA, the caselaw disagrees: Section 1692e provides "a substantive, and not merely procedural, statutory right under the FDCPA to be free from receiving allegedly false or deceptive information relating to the collection of a debt." *Napolitano*, 2017 WL 3535025, at *7; *see also Grubb v. Green Tree Servicing, LLC*, No. 13-cv-07421, 2017 WL 3191521, at *6 (D.N.J. July 27, 2017) (collecting cases and finding that Section 1692e's protections are "substantive in nature"). In fact, the "trend" in this district "favors finding concrete injury" when Section 1692e violations are alleged. *Napolitano*, 2017 WL 3535025, at *6. As courts have reasoned, allegations that debt collection letters contained "false and misleading statements" in violation of Section 1692e invoke "precisely [the harm] . . . the statute was intended to guard against." *Id.* (citation omitted).

Moreover, when a debt collector violates Section 1692e by providing false or misleading information, the informational injury that results—i.e., receipt of that false or misleading information—constitutes a concrete harm under *Spokeo*, which directs courts assessing intangible injuries to ask if the injury resembles harm traditionally recognized in English or American courts and if Congress elevated it to a legally cognizable injury. Section 1692e's "prohibition on providing false statements to induce a person to part with money" bears "a family resemblance to traditional causes of action for fraud and deceit, and protects interests

previously recognized at law." *Griffin v. Andrea Visgilio-McGrath, LLC*, No. 17-cv-0006, 2017 WL 3037387, at *6 (D.N.J. July 18, 2017). In passing the FDCPA, Congress also "elevated that entitlement to accurate disclosure" to the status of a legally cognizable, redressable injury. *Id.* (citing *In re Horizon Healthcare Servs. Inc., Data Breach Litig.*, 2017 WL 242554 at *9)); *see also Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp. 3d 656, 669 (D.N.J. 2017) ("The right not to be given false information about the true amount owed is rooted in an interest traditionally recognized at law. Congress, in enacting the FDCPA, could give content to that interest and elevate particular violations of it to the status of a viable federal cause of action.").

Accordingly, "an overwhelming majority of the courts in this district have found that various types of violations under § 1692e give rise to concrete, substantive injuries sufficient to establish Article III standing." *Napolitano*, 2017 WL 3535025, at *6 (collecting cases); *Thomas*, 232 F. Supp. 3d at 669–71 (explaining that violations of the "right not to be given false information about the true amount owed" on a debt under Section 1692e "fit easily within the *Spokeo* rationale" and give rise to concrete injuries for Article III standing); *Bordeaux*, 2017 WL 6619226, at *1 (holding that plaintiff had standing to assert Section 1692e(10) claim because plaintiff alleged she was "injured by the fact that she received misleading information, and this is a sufficient injury to confer standing"); *Grubb*, 2017 WL 3191521, at *7 (holding that allegations that "ostensibly constitute a violation under § 1692e of the FDCPA, are sufficient for the purpose of establishing concreteness"); *Griffin*, 2017 WL 3037387, at *5–6 (denying motion to dismiss because plaintiff alleged a concrete "informational injury—specifically, the receipt of false information—of the kind recognized in the case law," which establishes a "trend in favor of finding concrete injury under the FDCPA where a debt collection letter contains materially misleading statements"); *Fuentes v. AR Res., Inc.*, No. 15-cv-7988, 2017 WL 1197814, at *5

(D.N.J. Mar. 31, 2017) ("Accordingly, this Court joins the 'overwhelming majority of courts' that have determined that FDCPA violations under §§ 1692e and 1692f give rise to concrete, substantive injuries sufficient to establish Article III standing." (citations omitted)); *Carney v. Goldman*, No. 15-cv-260, 2016 WL 7408849, at *5 (D.N.J. Dec. 22, 2016) (finding that alleged violation of Section 1692e created a "clear" concrete "informational" injury in fact and thus plaintiffs "need not allege any additional harm" (citation omitted)).

Thus, Hovermale's claim that ICR violated her substantive FDCPA rights by sending her a letter including the materially misleading late charges language—when ICR had no lawful right to assess late charges—constitutes a concrete injury in fact. Hovermale's injury is also particularized because she received the debt collection communication. *See Grubb*, 2017 WL 3191521, at *7 (holding that plaintiff "clearly demonstrated" that she suffered a "particularized" injury because she "received a communication from Green Tree, in which Green Tree attempted to collect on a debt that Plaintiff allegedly owed"). Hovermale has thus shown a concrete and particularized injury as required to satisfy the injury in fact requirement of Article III standing.

This Court's decision in *Scibetta v. TD Banknorth, NA*, is not to the contrary. No. 16-cv-9218, 2017 WL 3448544, at *4 (D.N.J. Aug. 11, 2017). There, this Court granted the defendant's Rule 12(b)(1) motion to dismiss because the plaintiff lacked Article III standing to bring claims under Section 1692e(5) and 1692f(6)(B). *Id.* In finding that the plaintiff suffered no harm as to those claims, this Court observed that "at no point does the Complaint allege that PMA misstated its rights" when communicating with the plaintiff by letter. *Id.* Here, however, when ICR sent its letter, ICR misstated its right to assess late charges on defaulted Perkins loans. *See Hovermale*, 2016 WL 4157160, at *3 ("The Court agrees with Plaintiff that, because Plaintiff was in default on a Federal Perkins Loan, Defendant did not have the lawful right to add

late charges at the time it sent the Letter to Plaintiff."). As explained, such a showing is sufficient for Article III standing: Hovermale need not show, as ICR suggests, that she was actually misled. *See Bordeaux*, 2017 WL 6619226, at *1 (holding that plaintiff "need not show the debt collection letter actually confused or misled her").

ICR's opposition falls flat. ICR focuses on non-binding, out-of-circuit caselaw in arguing that Hovermale lacks a concrete injury. (Def.'s MTD Br. at 25–30; Def.'s MTD Rep. Br. at 5–8); *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018). ICR also chooses to rely on cases analyzing standing under different statutes. (Def.'s Br. at 25–30; Def.'s MTD Rep. Br. at 5–8.) As one court within the Third Circuit has already told ICR's counsel, these out-of-circuit, non-FDCPA cases do not control the instant issues. *See Daubert v. Nra Grp., LLC*, No. 15-cv-00718, 2016 WL 4245560, at *3 (M.D. Pa. Aug. 11, 2016) (finding standing and rejecting reliance on two cases cited here because "neither of these cases involved the FDCPA and neither of these cases are binding on this Court").

In the end, ICR ignores what courts in this district overwhelmingly recognize—that Section 1692e of the FDCPA provides a "substantive, statutory right . . . to be free from false or deceptive information in connection with the collection of a debt." *Fuentes*, 2017 WL 1197814, at *5. "Violations of this right 'give rise to concrete, substantive injuries sufficient to establish Article III standing.'" *Lopez v. Law Offices of Faloni & Assocs.*, LLC, No. 16-cv-01117, 2017 WL 2399083, at *2 (D.N.J. June 2, 2017) (quoting *Fuentes*, 2017 WL 1197814, at *5); *see also Grubb*, 2017 WL 3191521, at *6. And ICR's counsel should know, for they recently lost on the same lack of standing argument made here. *See Bordeaux*, 2017 WL 6619226, at *1 (holding that plaintiff had standing to bring a Section 1692e claim because plaintiff, like Hovermale, alleged she was "injured by the fact that she received misleading information, and this is a

sufficient injury to confer standing"). Yet instead of acknowledging—let alone attempting to distinguish—this and the many other in-district FDCPA standing cases, counsel doubles down on rejected positions. These recycled arguments are neither persuasive nor forthcoming. ICR's motion to dismiss is denied.

**B. Hovermale's Motion for Class Certification is Granted**

Because Hovermale has Article III standing, the Court turns to Hovermale's motion for class certification under Federal Rule of Civil Procedure 23. Hovermale's motion is granted because Hovermale satisfies Rule 23's requirements.

1. Rule 23 Class Certification Standard

To certify a class under Rule 23, a plaintiff must satisfy Rule 23(a)'s four requirements and one of Rule 23(b)'s three subsections. *See In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010). Under Rule 23(a), the plaintiff must show:

> (1) numerosity (a "class so large that joinder of all members is impracticable");
> (2) commonality ("questions of law or fact common to the class");
> (3) typicality (named parties' claims and defenses "are typical . . . of the class"); and
> (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Id.* at 341 n.14 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)) (alterations omitted). Under Rule 23(b)(3), which Hovermale invokes here, certification is proper if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In addition to these explicit requirements, the class must also be clearly defined and objectively ascertainable. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

A plaintiff must show that these requirements are met by a preponderance of the evidence, and a court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008). Thus, a court should certify a class only if the court finds, after a "rigorous analysis," that Rule 23's requirements are met. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

2. Class Definition and Ascertainability

A class is ascertainable if it is (1) "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). Here, Hovermale seeks to certify a class as follows:

> Each natural person to whom Immediate Credit Recovery, Inc. mailed a letter during the Class Period to a New Jersey address where the letter was in the same form or substantially similar form as Exhibit "A" and Immediate Credit Recovery Inc. cannot demonstrate that the letter was returned to Immediate Credit Recovery Inc. by the Postal Service.

(Doc. No. 88-8.) Hovermale defines the Class Period as the continuous period beginning July 20, 2014 and ending on August 13, 2015. (*Id.*) The proposed class definition does not include persons who, prior to the date the action is certified to proceed as a class, either (1) obtained a discharge in bankruptcy; (2) commenced an action in any court against ICR alleging a violation of the FDCPA; (3) signed a general release of claims against ICR; or (4) is a judge assigned to this case or member of such judge's staff or immediate family. (*Id.*) The class claims are defined as all claims under the FDCPA from ICR's sending the letter in the same or substantially similar form as "Exhibit A" of the Complaint. (*Id.*)

The Court finds the proposed class ascertainable. Class members are clearly defined and easily identified through ICR's business and mailing records to determine whether ICR mailed a "Letter 4" form letter to a New Jersey address during the relevant time. *See Bordeaux*, 2017 WL 6619226, at *3 (finding proposed class of individuals sent a form collection letter "ascertainable" because "[a]ll potential members are easily identified and can be contacted through defendants' business and mailing records"). ICR does not challenge to the proposed class's ascertainability. It is met here.

3. Rule 23(a)

a. Numerosity

Numerosity is satisfied here, as it is presumed if "the potential number of plaintiffs exceeds 40," *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001), and Hovermale points to evidence that ICR sent letters to 2,893 potential plaintiffs in New Jersey. (Stern Dec. at Ex. A.) ICR concedes that numerosity is satisfied when the potential class exceeds 40. (Def.'s Cert. Opp. at 29.) Yet ICR contends that Hovermale "fails to establish" numerosity because ICR only sent 207 such letters. (Def.'s Cert. Opp. at 29–31.) The Court is perplexed: 207 is more than 40.

b. Commonality

When, as here, an action is brought under Rule 23(b)(3), Rule 23(a)(2)'s commonality requirement "is subsumed by the predominance requirement" of Rule 23(b)(3). *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (quoting *Amchem Prods.*, 521 U.S. at 627). Thus, the predominance discussion below also accounts for the commonality requirement.

c. Typicality

Rule 23(a)(3) requires the plaintiff to show that the claims or defenses of the representative parties are "typical of the claims or defenses of the class." Fed. R. Civ. P.

23(a)(3). This requirement is satisfied when proposed class members' claims "arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Atis v. Freedom Mortg. Corp.*, No. 15-cv-3424, 2016 WL 7440465, at *7 (D.N.J. Dec. 27, 2016) (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). In FDCPA cases, "typicality has been satisfied when the same debt collection letters are sent to many individuals." *Bordeaux*, 2017 WL 6619226, at *4; *Grubb*, 2017 WL 3191521, at *20; *Weissman v. Gutworth*, No. 14-cv-00666, 2015 WL 3384592, at *3 (D.N.J. May 26, 2015); *Stair ex rel. Smith v. Thomas & Cook*, 254 F.R.D. 191, 198–99 (D.N.J. 2008).

Here, the proposed class includes those who received the same or substantially similar form letter from ICR containing the same late charges language. The legal arguments for whether this language violates the FDCPA will also be the same. Citing nothing, ICR argues that Hovermale cannot satisfy the "rigorous" typicality requirement because Hovermale has "no injury" from the late charges language, and the late charges language "had little to no impact on" her. (Def.'s Cert. Br. at 32.) But the Third Circuit has set a "low threshold" for satisfying the typicality requirement, which is met here. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001)). And as explained, ICR's attempts to re-litigate these issues are unpersuasive and addressed no further.

d. Adequacy

The fourth requirement of Rule 23(a) requires a plaintiff to show that as class representative, she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This "adequacy" requirement has two components: (1) whether counsel is qualified, experienced, and able to conduct the litigation; and (2) whether any conflicts of interest exist

between the named parties and the class they seek to represent. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998).

Hovermale meets the adequacy requirement, as does counsel. Hovermale states that she is willing and able to serve as class representative and that she knows of no reason her interests conflict with the class's. (Hovermale Dec. at 5, 10.) Although ICR argues that Hovermale's Section 1692g individual claim creates a conflict between her interests and the putative class's, (Def.'s Cert. Opp. Br. at 34), Hovermale explained that she "would abandon her other claims when the class is certified." (Pl.'s Cert. Rep. Br. at 12.) As for counsel, they have extensive experience litigating consumer class action cases, including FDCPA class action cases, and are willing to commit the time and resources to represent the class in this case. (Doc. No. 88-6, Thomasson Dec. at 3–12.)

ICR's contrary claims are unavailing. ICR argues that adequacy is not met because Hovermale failed to respond to discovery requests. (Def.'s Cert. Opp. Br. at 34.) Hovermale disputes this contention, arguing that the request was not timely served. (Pl.'s Cert. Br. at 23.) Whatever the case, this argument does not prevent an adequacy showing here, particularly where ICR cites no case to support its claim and counsel has significant FDCPA class action experience. ICR also argues that Hovermale's counsel is not qualified to serve as class counsel because counsel filed an untimely opposition to ICR's motion to dismiss. (Def.'s MTD Rep. Br. at 10–14.) But ICR makes this class certification argument in its entirely separate motion to dismiss reply brief, filed after class certification briefing concluded. ICR's argument is thus an improper sur-reply to Hovermale's motion for class certification and the Court declines to

consider it.[4] Even were it considered, ICR's argument would still fail because after considering counsel's letter explaining the filing issue (Doc. No. 98), the Court clearly stated that the opposition is considered timely. (Doc. No. 99.) Adequacy is met here.

4. Rule 23(b)

Because the proposed class meets the requirements of Rule 23(a), the Court turns to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, Rule 23(b)(3) imposes two additional requirements: "predominance" and "superiority. *Id.*; *see also Bordeaux*, 2017 WL 6619226, at *4. Both are met here.

As in similar FDCPA cases, predominance is satisfied because proposed class members received the same or substantially similar form letter containing the same late charges language, which creates the same legal issue: whether that language violates the FDCPA. *See Bordeaux*, 2017 WL 6619226, at *5 (finding predominance met when defendants sent "nearly identical" debt collection letters to proposed class members giving rise to the "central question of law" of whether the letter violated the FDCPA); *Grubb*, 2017 WL 3191521, at *22 (finding predominance met "because identical, or, substantially similar, debt collection letters are challenged by the class members" and potential class members' claims "turn[ed] on the same legal determination, i.e., whether the content of these communications are in violation of §§ 1692g and 1692e of the FDCPA"); *Stair*, 254 F.R.D. at 201.

[4] *See Carroll v. Delaware River Port Auth.*, No. 13-cv-02833, 2014 WL 3748609, at *1 n.2 (D.N.J. July 29, 2014) (disregarding sur-reply because "[d]efendant failed to ask for, much less receive, permission to file a sur-reply").

As to superiority, Rule 23(b)(3) provides a four-factor list that a court may use to assess whether class adjudication is superior to other forms of adjudication:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

All four factors support class adjudication here. Where individual claims are modest, class members' interest in bringing individual actions is low. *See Jones v. Commerce Bancorp, Inc.*, No. 05-cv-5600, 2007 WL 2085357, at *4 (D.N.J. July 16, 2007). That is generally true in FDCPA cases, which "typically result in an insignificant amount of monetary damages." *Grubb*, 2017 WL 3191521, at *24. Thus, "individualized prosecution by the class members would be inefficient and . . . therefore unlikely." *Id.*; *Stair*, 254 F.R.D. at 201. Nor is the Court aware of other litigations concerning this controversy, which is appropriately concentrated in New Jersey, where Defendant is registered as a foreign corporation and where proposed class members were mailed the form letters at issue. Finally, management difficulties are less likely when, as here, common questions predominate over the FDCPA claims. In fact, "FDCPA cases fit cleanly within" Rule 23(b)(3)'s superiority requirement. *Bordeaux*, 2017 WL 6619226, at *5. Thus, this case meets all of the requirements of Rule 23(a) and Rule 23(b)(3).

ICR's arguments do not prevent Hovermale from establishing superiority. ICR claims that class members "will likely recover significantly less than the statutory amount of damages provided for" under the FDCPA than if they pursued individual claims, and it "would be much simpler for any other similarly aggrieved parties . . . to bring their own lawsuits." (Def.'s Cert. Opp. at 37.) But again, the incentive to bring an individual claim may be low, and ICR's argument assumes that an aggrieved party "will be aware of her rights, willing to subject herself

to all the burdens of suing and able to find an attorney willing to take her case," considerations "that cannot be dismissed lightly." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). And a potential class member can always opt out and pursue individual litigation. *See Kausar v. GC Servs. Ltd. P'ship*, No. 15-cv-6027, 2017 WL 5175596, at *10 (D.N.J. Nov. 8, 2017) (rejecting argument that differences in damages sought by named plaintiff and potential class members preclude class certification because "the class member could simply opt out of the class" (citation omitted)). Thus, all class certification requirements are met here.

## III. CONCLUSION

For the foregoing reasons, ICR's motion to dismiss is **DENIED**, and Hovermale's motion for class certification is **GRANTED**. An Order shall issue.

Dated: 12/3/2018

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge